UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                            )
KURT SINGLETON,                             )
                                            )   No. C17-1712RSL
                    Plaintiff,              )
        v.                                  )   ORDER GRANTING IN PART
                                            )   DEFENDANT'S MOTION TO
INTELLISIST, INC., d/b/a Spoken             )   DISMISS
Communications,                             )
                                            )
                    Defendant.              )
_____)

This matter comes before the Court on "Defendant's Partial Pre-Answer Motion to Dismiss Under FRCP 12(b)(6)." Dkt. # 29. Plaintiff has asserted claims of breach of contract, breach of oral agreement, equitable relief under the procuring cause doctrine, and wrongful discharge in violation of public policy arising from his employment by defendant. Defendant argues that plaintiff's allegations regarding his claims of wrongful discharge and failure to pay commissions (whether under contract or in equity) are insufficient to state a claim upon which relief can be granted.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Somers v. Apple, Inc., 729 F.3d 953, 959–60 (9th Cir. 2013). All well-pleaded factual allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144–45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010). While the Court's review is generally limited to the contents of the complaint, Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996), it may nevertheless consider documents referenced extensively in the complaint, matters of public record, and documents whose contents are alleged in the complaint and whose authenticity is not challenged. Northstar Fin. Advisors Inc. v. Schwab Investments, 779 F.3d 1036, 1042–43 (9th Cir. 2015). The Court has, therefore, considered defendant's 2017 Sales Commission Plan Policy (hereinafter the "Commission Plan"), including the Sales Commission Plan Acknowledgment Form (hereinafter the "Acknowledgment Form") and the Individual Commission Sales Plan Document (hereinafter the "Individual Document") (Dkt. #6-1), and the Payment Card Industry Data Security Standards ("PCI Standards"). (https://www.pcisecuritystandards.org/documents/PCI_DSS_v3-2.pdf?agreement=true&time=1520542916337).

**I. Wrongful Discharge in Violation of Public Policy**

Plaintiff was employed as the Vice President of Global Business Development for the Sales and Client Services Group of defendant Spoken. Defendant is a call center technology company. The Spoken Labs Initiative ("SLI") is a research and development arm of defendant.

Plaintiff was tasked with negotiating service agreements with defendant's clients. A new service agreement was introduced, and plaintiff asked defendant's in-house counsel about a term: he was told that the new language was required to give defendant access to call recording data. Plaintiff spoke to the President of SLI, who informed him that SLI was already listening to call recording data. The recordings defendant was accessing included calls from members of the

1 public to call centers. Plaintiff raised concerns to the President of SLI that defendant's practice
2 of listening to call recording data violated the PCI Standards.

3       Plaintiff negotiated three deals with clients where the client objected to the term giving
4 SLI access to the call recording data, and plaintiff modified the agreement to prevent access.
5 Shortly after plaintiff raised his PCI Standards concern and negotiated the first client deal
6 modifying the term, defendant changed his title from vice president to director and reduced his
7 salary.[1] When plaintiff informed defendant for the third time that a client would not accept the
8 term of the service agreement that allowed it to listen to call recording data, defendant
9 terminated his employment. Plaintiff pleads wrongful discharge in violation of the public policy
10 favoring employee reports of employer misconduct (Dkt. #6 at ¶ 37) and the public policy in
11 favor of protecting the personal financial and credit information of the public as set forth in the
12 PCI Standards (Dkt. #6 at ¶ 36).

13       "In Washington, the general rule is that an employer can discharge an at-will employee
14 for no cause, good cause or even cause morally wrong without fear of liability." Ford v.
15 Trendwest Resorts, Inc., 146 Wn.2d 146, 152 (2002) (internal quotation omitted). "The tort for
16 wrongful discharge in violation of public policy is a narrow exception to the at-will doctrine . . .
17 To state a cause of action, the plaintiff must plead and prove that his or her termination was
18 motivated by reasons that contravene an important mandate of public policy." Becker v. Cmty.
19 Health Sys., Inc., 184 Wn.2d 252, 258 (2015).

20       In September 2015, the Washington Supreme Court issued three companion cases, Rose,
21 Becker, and Rickman, intending to clarify the formulation of this tort. See generally Rose v.
22 Anderson Hay & Grain Co., 184 Wn.2d 268 (2015); Becker, 184 Wn.2d 252; Rickman v.

---

[1] Plaintiff alleges that defendant reduced his salary after both the first and second client deals. The salary reductions are documented in the Commission Plan, which plaintiff alleges defendant presented to him after the first client deal in which access to the call recording data was limited. Plaintiff alleges that he never received commissions under the Commission Plan.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS    -3-

Premera Blue Cross, 184 Wn.2d 300 (2015). The court explained that there are four scenarios giving rise to wrongful discharge in violation of public policy claims that can be "easily resolved" under the framework initially articulated in Thompson v. St. Regis Paper Co., 102 Wn.2d 219 (1984). See Rose, 184 Wn.2d at 286–87; Becker, 184 Wn.2d at 258–59. These scenarios do not require much analysis because they implicate clear public policies. Id.; Karstetter v. King Cty. Corr. Guild, 1 Wn. App.2d 822, 832 (2017). The four scenarios are:

> (1) when employees are fired for refusing to commit an illegal act, (2) when employees are fired for performing a public duty or obligation, such as serving jury duty, (3) when employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims, and (4) when employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing.

Rose, 184 Wn.2d at 286–87 (internal citation omitted). If one of these four situations is at issue, the burden shifts to the defendant to show plaintiff's dismissal was for other reasons. See Id. at 287.

Plaintiff's theory is that he reported employer misconduct when he raised data security issues with the President of SLI. Whether plaintiff is entitled to protection as a whistle-blower depends, to some extent, on "the degree of alleged employer wrongdoing, together with the reasonableness of the manner in which the employee reported, or attempted to remedy, the alleged misconduct." Farnam v. CRISTA Ministries, 116 Wn.2d 659, 668–69 (1991) (internal citations omitted). Whistle-blowing requires that the employee "sought to further the public good, and not merely private or proprietary interests." Dicomes v. State, 113 Wn.2d 612, 620 (1989). While whistle-blowing does not require a violation of an explicit statutory requirement, it does require that the public benefit be more than remote and that the conduct be more than "merely praiseworthy from a subjective standpoint." Id. at 624 (1989). For purposes of this motion to dismiss, the Court finds that plaintiff has adequately alleged that he was concerned that defendant was violating the PCI Standards and that the concern touched on the public's

privacy interests. As plaintiff was not required to confirm the validity of his concerns before taking action, see Rickman, 184 Wn.2d at 312, it is sufficient that plaintiff reasonably believed that his employer was wrongfully accessing and using the call recording data. Regardless of whether the PCI Standards actually apply to defendant, plaintiff has alleged a plausible claim of wrongful conduct. Cf. Farnam, 116 Wn.2d at 672 (finding the employee did not seek to further the public good because she knew the employer's conduct did not violate the law). Additionally, the method plaintiff employed to raise his concern -- internal reporting -- was sufficiently reasonable to state a claim at this stage. Plaintiff states a claim on which relief can be granted to the extent his public policy claim is based on whistle-blower status.[2]

Plaintiff's other theory, that his discharge violated a public policy set forth in the PCI Standards, is not one of the four "easily resolved" scenarios discussed in Thompson. Plaintiff must therefore allege facts from which the Court could draw the plausible inference that the Perritt framework is satisfied. Rose, 184 Wn.2d at 287.[3] Under that analysis, courts consider:

> (1) the existence of a "clear public policy" (clarity element), (2) whether "discouraging the conduct in which [the employee] engaged would jeopardize the public policy" (jeopardy element), (3) whether the "public-policy-linked conduct caused the dismissal" (causation element), and (4) whether the employer is "able to offer an overriding justification for the dismissal" (absence of justification element).

---

[2] Defendant recognizes that plaintiff's claim may be characterized as whistle-blowing, but insists that plaintiff must allege facts showing "clarity" and "jeopardy" under a framework originally set forth in a treatise by Professor Henry H. Perritt (hereinafter, "the Perritt framework"). See Rickman, 184 Wn.2d at 310 (citing Henry H. Perritt, Jr., *Workplace Torts: Rights and Liabilities* § 3.14, at 75–76 (1991)). This "more refined analysis" is not necessary where defendant's alleged conduct violates one of the four public policies set forth in Thompson. See Rose, 184 Wn.2d at 287.

[3] The four elements of the Perritt framework have often been cited as the elements of the tort of wrongful discharge in violation of public policy, including in defendant's current motion. See Dkt. #29 at 5. However, the Washington Supreme Court has explained that the introduction of the Perritt framework was not intended to change the previously existing common law of the tort, but rather to provide a refined analysis available to supplement the preexisting precedent when additional guidance is needed. See Rose, 184 Wn.2d at 278, 287.

Id. at 277 (internal citation omitted).

To establish clarity, plaintiff must show that "a clear statement of public policy exists." Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC, 171 Wn.2d 736, 757 (2011). The clarity requirement is strict, and "plaintiff must establish that the public policy is clearly legislatively or judicially recognized." Becker, 184 Wn.2d at 258. A statute or judicial decision that touches on a relevant issue is not enough: the public policy mandate "must be clear and truly public." Roe, 171 Wn.2d at 757 (internal citation omitted).

The question for the Court is whether the PCI Standards constitute a clear statement of public policy. In his response, plaintiff argues that the PCI Standards are incorporated into Washington law through RCW 19.255.020. That statute provides a safe haven for companies that are certified compliant with the PCI Standards and a means by which they can recover actual costs if credit or debit cards have to be reissued. It does not establish a clear policy protecting the public's personal financial and credit information. Plaintiff has failed to identify a clear public policy under RCW 19.225.020. The Court need not consider the remaining Perritt factors.[4]

---

[4] In Rickman, the third of the companion cases issued by the Washington Supreme Court in 2015, the court analyzed what appears to be a whistle-blower claim. 184 Wn.2d at 308. Rather than analyze the claim under the Thompson framework, the court skipped straight to a consideration of the Perritt factors. Rickman. 184 Wn.2d at 311–15. Justice Fairhurst, concurring, noted that the majority's analysis did not comport with the framework it had just established in Rose. Despite this hint, the court made no effort to explain why it skipped over Thompson in favor of Perrit. The undersigned joins Justice Fairhurst in recognizing that Rickman creates confusion in determining the applicable standard in an apparent whistle-blower case. For purposes of completeness, the Court finds that plaintiff's whistle-blowing-based claim would survive a motion to dismiss under both the Thompson and Perritt frameworks. Plaintiff's allegation that he was terminated for whistle-blowing fulfills the clarity element, his allegation that he reported internally fulfills the jeopardy element, and defendant has not challenged the causation and justification elements.

**II. Failure to Pay Commissions - Breach of Contract**

Defendant acknowledges that the Commission Plan is a contract between plaintiff and defendant, but argues that plaintiff is not entitled to receive commissions under that contract because he failed to satisfy a condition precedent to payment, namely signing the Acknowledgment Form. A signed Acknowledgment Form is necessary both to accept the Commission Plan (Dkt. #6-1 at 6, § II(M)) and to be eligible to receive commissions thereunder (Dkt. #6-1 at 3, § II(A)). Plaintiff alleges that defendant's Vice President requested that plaintiff not sign the Acknowledgment Form until at least one senior executive had signed on, but assured plaintiff that defendant would abide by the agreement until signed. Dkt. #6 at ¶ 14. Plaintiff also alleges that defendant acted pursuant to the Commission Plan when it twice lowered his salary. Dkt. #6 at ¶¶ 14, 16; Dkt. #6-1 at 9.

Under Washington law, "procedural contract requirements must be enforced absent either a waiver by the benefitting party or an agreement between the parties to modify the contract." Mike M. Johnson, Inc. v. Cty. of Spokane, 150 Wn.2d 375, 386–87 (2003) (citations omitted). "A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result from an express agreement or be inferred from circumstances indicating an intent to waive." Bainbridge Island Police Guild v. City of Puyallup, 172 Wn.2d 398, 409–10 (2011) (citation omitted). Defendant apparently does not dispute that it waived the signature requirement for one purpose (contract formation) but argues that the requirement was not waived for another purpose (eligibility for commissions). This distinction has no basis in the complaint or in the Commission Plan. The Court finds that plaintiff has adequately alleged that the signature requirement was expressly waived by the Vice President and impliedly waived when defendant acted as authorized in the Commission Plan.

**III. Failure to Pay Commissions - Equitable Relief Under Procuring Cause Doctrine**

Under Washington law, "[t]he procuring cause rule states that when a party is employed to procure a purchaser and does procure a purchaser to whom a sale is eventually made, he is entitled to a commission regardless of who makes the sale if he was the procuring cause of the sale." Willis v. Champlain Cable Corp., 109 Wn.2d 747, 754 (1988). The procuring cause rule does not apply when "a written contract provides the manner by which termination can be effected as well as how commissions will be awarded when an employee or agent is terminated." Id. at 755. Defendant argues that plaintiff's procuring cause doctrine claim should be dismissed because the written Commission Plan addresses the payment of commissions after termination of employment. Defendant has, however, taken a position which may result in a finding that no written contract exists. Plaintiff will be permitted to proceed in the alternative on his equitable claim under the procuring cause doctrine until the written contract issue is finally resolved. Fed. R. Civ. P. 8(d)(2) and (3).

For the foregoing reasons, defendant's motion to dismiss (Dkt. # 29) is GRANTED in part and DENIED in part. To the extent plaintiff's claim for wrongful discharge in violation of public policy is premised solely on the PCI Standards, it is DISMISSED. Plaintiff's other claims may proceed.

Dated this 8th day of May, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge